Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Southern District of New York                                    1:20-cv-02000

| | |
|---|---|
| Adrianna Spitzer, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>    - against -<br><br>Celestial Seasonings, Inc.,<br><br>       Defendant | Class Action Complaint |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Celestial Seasonings, Inc. ("defendant") manufactures, distributes, markets, labels and sells bags of herbal tea characterized by vanilla  under their Celestial Seasonings brand ("Products").

2. The Products are available to consumers from retail and online stores of third-parties and are sold in sizes including boxes of 20 tea bags (1.1 OZ).

3. The relevant front label representations include the brand, "Herbal Tea," "Caffeine Free," "Sleepytime," and "Vanilla" and a picture of the vanilla flower.



4.     The Product's back panel describes the tea:



"Lovers of vanilla, rejoice! We've added the creamy flavor of rich vanilla to our original Sleepytime® blend of floral chamomile, cool spearmint and lively lemongrass. It's a smooth and satisfying way to wind down your day with this beloved herbal tea."

5.     The information panel contains the ingredient list:

INGREDIENTS: CHAMOMILE, SPEARMINT, LEMONGRASS, NATURAL FRENCH VANILLA FLAVOR, BLACKBERRY LEAVES, HAWTHORN, ORANGE BLOSSOMS, TILIA FLOWERS AND ROSEBUDS.

6.     The Product purports to be a herbal tea characterized by vanilla, which is false, deceptive and misleading because the Product contains non-vanilla flavors which imitate and extend vanilla but are not derived from the vanilla bean, yet these flavors are not disclosed to

2

consumers as required and expected.

I.      Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

7.      The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized flavor commonly known as vanilla, defined by law as "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[1]

8.      Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[2]

9.      Though the Pure Food and Drugs Act of 1906 ("Pure Food Act") was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[3]

10.     It was evident that protecting consumers from fraudulent vanilla would be challenging, as E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[4]

11.     This demand could not be met by natural sources of vanilla, leading manufacturers to devise clever, deceptive and dangerous methods to imitate vanilla's flavor and appearance.

12.     Today, headlines tell a story of a resurgent global threat of "food fraud" – from olive

---

[1] 21 C.F.R. §169.3(c).

[2] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.

[3] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[4] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

oil made from cottonseeds to the horsemeat scandal in the European Union.[5]

13.   Though "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

A.   <u>Food Fraud as Applied to Vanilla</u>

14.   Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[6]

15.   The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[7]

| <u>Type of Food Fraud</u> | <u>Application to Vanilla</u> |
|---|---|
| ➢ Addition of markers specifically tested for instead of natural component of vanilla beans | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Appearance of *more* and/or higher quality of the valued ingredient | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks the product contains real vanilla beans, when the ground beans have been exhausted of flavor |
| | • Caramel to darken the color of an imitation vanilla so it |

---

[5] Jenny Eagle, <u>'Today's complex, fragmented, global food supply chains have led to an increase in food fraud'</u>, FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., <u>Do we really know what's in our plate?</u>. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "<u>How to tackle food fraud in official food control authorities in Germany.</u>" Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.
[6] Société Générale de Surveillance SA, ("SGS "), <u>Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation</u>, May 2019.
[7] Kathleen Wybourn, DNV GL, <u>Understanding Food Fraud and Mitigation Strategies</u>, PowerPoint Presentation, Mar. 16, 2016.

more closely resembles the hue of real vanilla[8]

- Annatto and turmeric extracts in dairy products purporting to be flavored with vanilla, which causes the color to better resemble the hue of rich, yellow butter

➢ Substitution and replacement of a high-quality ingredient with alternate ingredient of lower quality

- Tonka beans, though similar in appearance to vanilla beans, are banned from entry to the United States due to fraudulent use
- Coumarin, a toxic phytochemical found in Tonka beans, added to imitation vanillas to increase vanilla flavor perception

➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component

- Synthetically produced ethyl vanillin, from recycled paper, tree bark or coal tar, to imitate taste of real vanilla

➢ Compounding, Diluting, Extending

- "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste"[9]
- Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[10]
- "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark

➢ Addition of fillers to give

- Injection of vanilla beans with mercury, a poisonous

---

[8] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[9] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[10] Berenstein, 423.

| | |
|---|---|
| the impression there is more of the product than there actually is | substance, to raise the weight of vanilla beans, alleged in *International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005, Docket Number L-4486-09, Superior Court of New Jersey, Middlesex County |

- Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list
  - o "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of flavor and used for aesthetics
  - o "natural vanilla flavorings" – "-ing" as suffix referring to something *like* that which is described

➤ Ingredient List Deception[11]

  - o "Vanilla With Other Natural Flavors" – implying – wrongly – such a product has a sufficient amount of vanilla to characterize the food
  - o "Natural Flavors" – containing "natural vanillin" derived not from vanilla beans but from tree pulp. When paired with real vanilla, vanillin is required to be declared as an artificial flavor
  - o "Non-Characterizing" flavors which are not identical to vanilla, but that extend vanilla

16.     The "plasticity of legal reasoning" with respect to food fraud epitomize what H. Mansfield Robinson and Cecil H. Cribb noted in 1895 in the context of Victorian England:

---

[11] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.

the most striking feature of the latter-day sophisticator of foods is his knowledge of the law and his skill in evading it. If a legal limit on strength or quality be fixed for any substance (as in the case of spirits), he carefully brings his goods right down to it, and perhaps just so little below that no magistrate would convict him.

*The law and chemistry of food and drugs*. London: F.J. Rebman at p. 320.[12]

B.   The Use of Vanillin to Simulate Vanilla

17.   The most persistent challenger to the authenticity of real vanilla has been synthetic versions of its main flavor component, vanillin.

18.   First synthesized from non-vanilla sources by German chemists in the mid-1800s, vanillin was the equivalent of steroids for vanilla flavor.

19.   According to Skip Rosskam, a professor of vanilla at Penn State University and former head of the David Michael flavor house in Philadelphia, "one ounce of vanillin is equal to a full gallon of single-fold vanilla extract."[13]

20.   Today, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant, which means that almost all vanillin has no connection to the vanilla bean.

21.   Nevertheless, disclosure of this powerful ingredient has always been required where a product purports to be flavored with vanilla. *See* Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168 (cautioning consumers that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label.").

22.   Since vanilla is the only flavor with its own standard of identity, its labeling is controlled not by the general flavor regulations but by the standards for vanilla ingredients.

23.   This means that if a product is represented as being characterized by vanilla yet

---

[12] Cited in Sébastien Rioux, "Capitalist food production and the rise of legal adulteration: Regulating food standards in 19th-century Britain," Journal of Agrarian Change 19.1 (2019) at p. 65 (64-81).

[13] Katy Severson, Imitation vs. Real Vanilla: Scientists Explain How Baking Affects Flavor, Huffington Post, May 21, 2019.

contains non-vanilla vanillin, the label and packaging must declare vanillin an artificial flavor. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'."); *see also* 21 C.F.R. § 169.181(b), § 169.182(b) (Vanilla-vanillin flavoring and Vanilla-vanillin powder).

24.    This prevents consumers from being misled by products which may taste similar to real vanilla and but for consumer protection requirements, would be sold at the price of real vanilla.

C.    Production of "Natural Vanillins" Combined with "Natural Vanilla"

25.    The past ten years have seen many vanillins purporting to be a "natural flavor" – derived from a natural source material which undergoes a natural production process.

26.    However, "natural vanillin" is not a "natural vanilla flavor" because the raw material is not vanilla beans but ferulic acid and eugenol.

27.    Ferulic acid can be converted to vanillin through a natural fermentation process which is cost prohibitive for almost all applications.

28.    Vanillin from eugenol is easier to produce in a way claimed to be a "natural process."

29.    However, because this process occurs without transparency or verification in China, regulators and consumers are not told the production method is more properly described as that of an artificial flavor, involving a chain of chemical reactions.

II.    Flavor Industry's Efforts to Use Less Vanilla, Regardless of any Shortages

30.    The "flavor industry" refers to the largest "flavor houses" such as Symrise AG, Firmenich, Givaudan, International Flavors and Fragrances (including David Michael), Frutarom and Takasago International along with the largest food manufacturing companies such as Unilever.

31.    The recent global shortage of vanilla beans has provided the flavor industry another

opportunity to "innovate[ing] natural vanilla solutions…to protect our existing customers."[14]

32.    Their "customers" do not include the impoverished vanilla farmers nor consumers, who are sold products labeled as "vanilla" for the same or higher prices than when those products contained *only* vanilla.

33.    These efforts include (1) market disruption and manipulation and (2) the development of alternatives to vanilla which completely or partially replace vanilla.

A.   Flavor Industry's Attempt to Disrupt Supply of Vanilla to Create a "Permanent Shortage"

34.    The flavor industry has developed schemes such as the "Sustainable Vanilla Initiative" and "Rainforest Alliance Certified," to supposedly assure a significant supply of vanilla at stable, reasonable prices.

35.    Contrary to their intention, these programs make vanilla less "sustainable" by paying farmers to destroy their vanilla and harvest palm oil under the pretense of "crop diversification."

36.    There have also been allegations that these programs use child and/or slave labor.

37.    Other tactics alleged to be utilized by these companies include "phantom bidding," where saboteurs claim they will pay a higher price to small producers, only to leave the farmers in the lurch, forced to sell at bottom dollar to remaining bidders.[15]

38.    The reasons for these counterintuitive actions is because they benefit from high vanilla prices and the use of less real vanilla.

39.    When less vanilla is available, companies must purchase the higher margin, proprietary, "vanilla-like" flavorings made with advanced technology and synthetic biology.

---

[14] Amanda Del Buono, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.
[15] Monte Reel, The Volatile Economics of Natural Vanilla in Madagascar, Bloomberg.com, Dec. 16, 2019.

B.  Use of Vanilla WONF Ingredients to Replace and Provide Less Vanilla

40.    Though flavor companies will not admit their desire to move off real vanilla, this conclusion is consistent with the comments of industry executives.

41.    According to Suzanne Johnson, vice president or research at a North Carolina laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price," known as "Vanilla WONF."

42.    The head of "taste solutions" at Irish conglomerate Kerry urged flavor manufacturers to "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

43.    A compounded vanilla flavor "that matches the taste of pure vanilla natural extracts" can supposedly "provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."[16]

44.    These compounded flavors exist in a "black box" with "as many as 100 or more flavor ingredients," including potentiators and enhancers, like maltol and piperonal, blended together to enhance the vanilla, allowing the use of less vanilla to achieve the intended taste.[17]

45.    The effort to replace vanilla with so-called Vanilla WONF started in the late 1960s, but the last 10 years have seen the proliferation of this ingredient.

C.  Decline of Industry Self-Governance

46.    That high-level executives in the flavor industry are willing to boast of their stratagems to give consumers less vanilla for the same or greater price is not unexpected.

47.    The once powerful and respected trade group, The Flavor and Extract Manufacturers

---

[16] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.
[17] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "That *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).

Association ("FEMA"), abandoned its "self-policing" of misleading vanilla labeling claims and disbanding its Vanilla Committee.

48.    FEMA previously opposed industry efforts to deceive consumers but cast the public to the curb in pursuit of membership dues from its largest members, such as Unilever.

III.   Consumers Expect That Where a Product Does Not Conspicuously Identify as "Flavored"
       That it Will Contain the Named Food to Provide it Flavor
IV.

49.    The Product's designation of its characterizing flavor as "Vanilla" without any qualifying terms – – gives consumers the impression that its entire flavor (taste sensation and ingredient imparting same) is contributed by the characterizing food ingredient of vanilla beans. *See* 21 C.F.R. § 101.22(i)(1) (describing a food which contains no simulating artificial flavor and not subject to 21 C.F.R. § 101.22(i)(1)(i)-(iii)).

50.    Consumers expect that where a food is a part of a product name of a packaged food, that it contain that food in an amount sufficient to independently characterize the product.

51.    Federal regulations on this subject were implemented to establish standards, which when complied with by industry, will prevent consumers from being misled.

52.    For instance, foods labeled "strawberry shortcake," "vanilla herbal tea" or "apple pie," will be expected to contain amounts of the characterizing ingredients – strawberries, vanilla or apples – to independently characterize the food. *See* 21 C.F.R. § 101.22(i)(1) ("If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that…").

V.     Front Label is Misleading Due to Not Disclosing Non-Vanilla Flavors That Affect the

Amount of Vanilla Used and Enhance the Vanilla Taste

53.   The Product is required to be labeled consistent with the flavor regulations in 21 C.F.R. §101.22.

54.   By not including any qualifying terms after "vanilla" such as flavored, with other natural flavors, "French" or artificially flavored, consumers expect the Product contains actual vanilla from the vanilla bean, that vanilla is the characterizing flavor, the amount of vanilla is sufficient to flavor the Product and no other flavors simulate, resemble, reinforce, enhance or extend the flavoring from vanilla.

A.   "Natural French Vanilla Flavor" is a Non-Vanilla Flavor

55.   The use of the term "vanilla" without qualification means the vanilla has not been blended or compounded with non-vanilla flavors.

56.   In such scenarios, either of the two standardized, exclusively vanilla ingredients – vanilla extract or vanilla flavoring – will be designated on the ingredient list. *See* 21 C.F.R. § 169.175(b)(1) ("The specified name of the food is 'Vanilla extract' or 'Extract of vanilla'."); *see also* 21 C.F.R. § 169.177(b) ("The specified name of the food is 'Vanilla flavoring.'").

57.   The Product's ingredient list does not contain vanilla extract or vanilla flavoring but identifies "Natural French Vanilla Flavor."

**INGREDIENTS:** CHAMOMILE, SPEARMINT, LEMONGRASS, NATURAL FRENCH VANILLA FLAVOR, BLACKBERRY LEAVES, HAWTHORN, ORANGE BLOSSOMS, TILIA FLOWERS AND ROSEBUDS.

**INGREDIENTS:** CHAMOMILE, SPEARMINT, LEMONGRASS, NATURAL FRENCH VANILLA FLAVOR, BLACKBERRY LEAVES, HAWTHORN, ORANGE BLOSSOMS, TILIA FLOWERS AND ROSEBUDS.

58.   The standards of identity for vanilla products do not include "French vanilla":

| 21 C.F.R. | Standardized Vanilla Ingredients |
|---|---|
| § 169.175 | Vanilla extract. |
| § 169.176 | Concentrated vanilla extract. |
| § 169.177 | Vanilla flavoring. |
| § 169.178 | Concentrated vanilla flavoring. |
| § 169.179 | Vanilla powder. |
| § 169.180 | Vanilla-vanillin extract. |
| § 169.181 | Vanilla-vanillin flavoring. |
| § 169.182 | Vanilla-vanillin powder. |

B.  **"French Vanilla Flavor" is not a Standardized Vanilla Flavor**

59.    The Product's flavor ingredient is more precisely identified as "Natural French Vanilla Flavor With Other Natural Flavor" or "Nat French Vanilla WONF."

60.    The most logical explanation of this ingredient is that it contains a *de minimis* amount of vanilla, custard-like flavors and "other natural flavors."[18]

61.    Federal regulations define "Other Natural Flavors" as flavors not from the product whose flavor is simulated:

> If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

21 C.F.R. § 101.22(i)(1)(iii).

62.    Had the ingredient been designated as "French Vanilla WONF" or "Vanilla WONF,"

---

[18] These "other natural flavors" likely consists of vanillin from natural sources.

consumers would still not know that "With Other Natural Flavors" means these flavors (1) are not derived from vanilla and (2) "simulate[s], resemble[s] or reinforce[s] the characterizing flavor" of vanilla.  *See* 21 C.F.R. § 101.22(i)(1)(iii).

63.    Though vanilla combined with "other natural flavors" may be labeled as "vanilla flavor with other natural flavors" on a front label, consumers are misled because they are accustomed to the standardized vanilla ingredients – vanilla extract and vanilla flavoring.

64.    Since "'vanilla extract' and 'vanilla flavoring' are standardized foods and these products are expensive," it is necessary to "distinguish this product from other similar products [based on] the general principles of 21 CFR 102.5 should apply."  Exhibit A, Letter from FDA to Ernie Molina, Warner-Jenkinson Company of California, January 17, 1980

65.    21 C.F.R. § 102.5(b) requires disclosure of the "percentage(s) of any characterizing ingredient(s) or component(s) [as part of the product name] when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case."

66.    If a "Vanilla Flavor With Other Natural Flavors" consists of half vanilla and half non-vanilla natural flavors, a non-misleading name should state "contains 50% vanilla extract and 50% non-vanilla flavors" or whatever the proportions are. Exhibit A; 21 C.F.R. § 102.5(b).

67.    If the amount of vanilla from vanilla beans is sufficient to independently characterize the Product, the front label could state "[Vanilla] With Other Natural Flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii); *see also* 21 C.F.R. § 101.22(i)(1) ("introductory text" describing scenario where food contains "no artificial flavor which simulates, resembles or reinforces the characterizing flavor," and none of the sub-paragraphs of 21 C.F.R. § 101.22(i)(1) apply).

68.     If the amount of vanilla from vanilla beans is insufficient to independently characterize the Product, the front label would state "[Vanilla] Flavored With Other Natural Flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii) referring to "paragraph (i)(1)(i) of this section"; *see also* 21 C.F.R. § 101.22(i)(1)(i).

69.     Defendant's front label fails to choose either of these options which is misleading to consumers who expect the Product's flavor to come entirely from vanilla, since there are no qualifications on the front label.

C.   "French Vanilla" Attributes of the Product Require "Artificially Flavored" on Front Label

70.     Chicago Tribune columnist Bill Daley explains in his article, "What's French about French vanilla?[19]":

> Vanilla bean varieties are often named for where they're grown, like Madagascar, Tahiti and Mexico. That's not the case with French vanilla. The name refers not to a vanilla variety but the classic French way of making ice cream using an egg custard base.

71.     The director of flavors for International Flavors & Fragrances, Inc. ("IFF") offers the following explanation:

> Today, in sensory terms, when we refer to French vanilla, it is when the vanilla flavor is caramelized, custard-like, cooked, egg yolk-like, slightly floral.[20]

72.     Consumers purchasing an herbal tea purporting to be characterized by vanilla do not expect the Product to have a "caramelized, custard-like" taste and expect real vanilla not modified as a "french vanilla."

73.     Even if the front label representations disclosed the presence of "Natural French Vanilla Flavor," no such flavor could exist in the Product because it does not contain egg (or even

---

[19] Bill Daley, "What's French about French vanilla?," Chicago Tribune, February 15, 2011.
[20] *Id*.

milk) ingredients.

74.     The Food Allergen Labeling and Consumer Protection Act ("FALCPA") requires "food manufacturers to list if one or more of the eight major food allergens are in a natural flavor. This includes: milk, egg, peanuts, tree nuts, wheat, soy, fish and crustacean shellfish."[21]

75.     The Product does not list the presence of eggs or milk beneath the ingredient list, which it would be required to do if the natural flavor contained these foods.

76.     Due to the absence of egg-derived ingredients, the "French Vanilla" flavor cannot originate from eggs, "the product whose flavor is simulated," the Product "shall be labeled either with the flavor of the product from which the flavor is derived or as 'artificially flavored.'"  *See* 21 C.F.R. § 101.22(i)(1)(ii);  *see also* 21 C.F.R. § 101.22(i)(3)(ii) (requiring a product which "contains more than one flavor" to only indicate in one front label location whether it contains natural or artificial flavors).

VI.     Conclusion

77.     The identification of "Natural French Vanilla Flavor" on the ingredient list is not consistent with the front label flavor designation of "Vanilla" as the characterizing flavor of the Product.

78.     Consumers are misled because identifying "Natural French Vanilla Flavor" on the ingredient list fails to disclose the "Other Natural Flavors" which are a part of this ingredient.

79.     Consumers are misled even if they read the ingredient list because "Natural French Vanilla Flavor" on the ingredient list will not tell them that part of the natural flavor – the "French" in "French Vanilla" – does not derive from the food whose flavor is simulated, eggs.

---

[21] Sydney Ross Singer, "Attention, Allergy Sufferers: Beware of Natural Flavors," Food Safety News, December 2, 2015.

80.    Consumers are misled because the Product has less vanilla than the front label suggest, derives its vanilla taste from other non-vanilla flavors and should be labeled "artificially flavored" based on having a "french vanilla" flavor with no eggs.

81.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud consumers.

82.    Defendant has sold more of the Products and at higher prices per unit than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

83.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

84.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

85.    Had plaintiff and class members known the truth, they would not have bought the Products or would have paid less for it.

86.    The Product contains other representations which are misleading and deceptive.

87.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $3.89 per 1.1 OZ, excluding tax, compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

88.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

89.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal

diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

90.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

91.    This is a reasonable assumption because defendant's Products are sold in thousands of stores across the country and have been sold bearing the allegedly misleading claims for at least three years.

92.    Defendant is a Delaware corporation with a principal place of business in Boulder, Boulder County, Colorado and is a citizen of Colorado.

93.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

94.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

95.    A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

96.    Plaintiff is a citizen of New York, New York County, New York.

97.    Defendant Celestial Seasonings, Inc. is a Delaware corporation with a principal place of business in Boulder, Colorado, Boulder County.

98.    During the relevant statutes of limitations, plaintiff purchased, used or consumed the Product within this district and/or State for personal consumption or use in reliance on the representations.

Class Allegations

99.   The classes will consist of all purchasers of the Product in New York, the other 49 states and a nationwide class, during the applicable statutes of limitations.

100.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

101.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

102.   Plaintiff is an adequate representative because her interests do not conflict with other members.

103.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

104.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

105.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

106.   Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York GBL §§ 349 & 350</u>
<u>(Consumer Protection from Deceptive Acts)</u>

107.   Plaintiff incorporates by reference all preceding paragraphs.

108.   Plaintiff and class members desired to purchase, consume and use products or services which were as described and marketed by defendant and expected by reasonable consumers, given the product or service type.

109.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

110.   Defendant misrepresented the substantive, quality, compositional, organoleptic

and/or nutritional attributes of the Products.

111.  Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product contains sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Product, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor, only contained flavor from vanilla and contained some flavor from the product whose flavor was simulated.

112.  Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

113.  Plaintiff incorporates by reference all preceding paragraphs.

114.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

115.  Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product contains sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Product, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor, only contained flavor from vanilla and contained some flavor from the product whose flavor was simulated.

116.  Defendant had a duty to disclose and/or provide non-deceptive marketing of the Products and knew or should have known same were false or misleading.

117.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or

service type.

118.  The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

119.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

120.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

121.  Plaintiff incorporates by reference all preceding paragraphs.

122.  The Products were manufactured, labeled and sold by defendant and warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

123.  Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

124.  This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

125.  Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

126.  Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years.

127.  The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

128.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

129.   Plaintiff incorporates by references all preceding paragraphs.

130.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product contains sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Product, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor, only contained flavor from vanilla and contained some flavor from the product whose flavor was simulated.

131.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true.

132.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

133.   Plaintiff incorporates by reference all preceding paragraphs.

134.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1.   Declaring this a proper class action, certifying Plaintiff as representative and undersigned

as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   March 6, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-02000
United States District Court
Southern District of New York

Adrianna Spitzer, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Celestial Seasonings, Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
  505 Northern Blvd Ste 311
  Great Neck NY 11021-5101
     Tel: (516) 303-0552
     Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: March 6, 2020

/s/ Spencer Sheehan
Spencer Sheehan